34789.   SMITH *et al. v.* ABERCROMBIE *et al.*

Decided November 7, 1953.

*D. L. Lomenick, Jr., G. W. Langford,* for plaintiffs in error. *Gleason & Painter, McClure & Hale, A. W. Cain, Jr.,* contra.

SUTTON, C. J. ■ The first special ground of the motion for new trial assigns error upon a part of the charge of the court to the jury to the effect that, under the contract between the parties, the defendants were not relieved from paying rent for the month of March, as they had stayed on the farm and had not vacated it during that month, referred to in the contract as the 30-day period following the 60-day period from December 31, 1951. The defendants contend that the excerpt from the charge was an erroneous interpretation of the contract, which provided that the defendants would become tenants at will of the plaintiffs at the end of the 30-day period; and that the charge directed the jury to find rent for the month of March, 1952, while under a proper construction of the contract no rent was due to the plaintiffs for that month.

The contract provided for, and the defendants made, payments of $331 as monthly rental in January and February, 1952. The defendants also agreed to vacate the premises within 30 days after the first two months in 1952 if they did not pay the $18,000 owed to the plaintiffs. They neither paid the sum due nor vacated the premises, and the contract made no provision for rent in such event, nor did it provide what the relation between the parties was to be during the 30-day period, although thereafter it was to be that of landlord and tenant at will, without a specified rental. But although the contract was silent as to rent and a landlord-tenant relationship during the 30-day period (March, 1952) nevertheless the defendants, whose option to purchase had expired at the end of February, 1952, were rightfully in possession of the farm during March, 1952, as tenants of the plaintiffs who owned the farm, regardless of what the exact nature of the tenancy was. Under such circumstances, an obligation to pay a reasonable rental is implied, in the absence of a specific contractual provision therefor. Code § 61-103. The court properly instructed the jury that the defendants were not relieved from paying rent for the month of March, 1952, and this ground of the motion is without merit.

■ Special ground 2 of the motion assigns error on the following part of the charge: "It is up to you, gentlemen, to de-

termine from all of the evidence the amount of the value of the rent from March 1st to September 25th, and decide how much credit should be given, if any. If Mr. Smith was authorized to make those other two payments, [of course, they paid the $331 in January and February, you are not concerned with that as rent for those months, I direct that Mr. Smith was authorized to make those payments and get credit for them.] As for the months of March and April, whether they would be entitled to credit for that, you will determine that question, if they are entitled to those payments. If you do, then whatever total amount, if it is above $662, you would give them credit for $662 on the amount, for those two months, in which you find you should give credit for, whether it was for the months of March and April. I believe ·the defendant testified he paid one in March and another in May, for April." (Brackets ours.) This is said to have been confusing and misleading to the jury, and it is contended by the defendants that it set the rent for the months of March and April, 1952, at $331 per month insead of a reasonable rent for those months, and tended to impress the jury that the verdict should be for $331 per month as rent, since the defendants had paid these sums for the months of March and April.

In the charge here complained of, the jury was instructed to determine the amount of the value of the rent from March to September, and to decide whether credit should be given for the payments of $662 made after March 1, depending on whether such payments to the First Federal Savings & Loan Association of Chattanooga were authorized by the plaintiffs. If the total amount of the value of the rent was found to be over $662, and if the payments were authorized, then the defendants were to be credited with the $662. The portion of the excerpt dealing with the payments made in January and February, which we have placed in brackets above, was parenthetical and properly served to remove from the case the question of rent for those months.

That the jury so understood the charge is shown by the form of their verdict: "We the jurors agree for twenty-six-sixty-two ($2,662) less $662, total $2,000, in favor of the plaintiff." The charge complained of was not erroneous for any reason assigned.

■ In special ground 3, error is assigned upon an instruction that, where one enters into possession as a tenant, and no amount of compensation is agreed upon, the law implies an undertaking to pay a fair and reasonable amount, "which may be collected under distress warrant claiming specific amount." It is not asserted that the charge contains an incorrect principle of law, and it was not confusing and misleading to the jury, as contended. The contention that the phrase quoted above tended to impress the jury that the amount claimed in the distress warrant proceeding was the fair and reasonable amount to be collected is without merit. The court had already explained to the jury that the burden was on the plaintiffs to establish their contentions about the rent and the amount thereof, and that the issues were whether the defendants owed rent, and if so, how much, i.e., whether the plaintiffs were entitled to either the sum claimed in their affidavit or any other sum. The charge here complained of shows that the specific amount alleged in the affidavit for a distress warrant is only a claimed amount. Special ground 3 shows no error.

■ It is contended in special ground 4 that the court erred in refusing to grant a mistrial upon the defendant's motion while one of the plaintiffs, Eugene Turner, was being cross-examined by counsel for the defendants. When asked what kind of cows were at the farm, Turner replied, "Well, he had our good cows there, still got them, I presume." Counsel for the defendants moved for a mistrial on the ground that the answer was not responsive to the question; the court denied the motion and instructed the witness to answer the questions asked. When asked how many cows had come in fresh with calves during the past year, the plaintiff Turner replied, "No sir, I know that some of them come in with calves last year, numbers of them; Mr. Smith taken our calves and sold them at the stockyard." The motion for a mistrial was renewed, on the ground that the witness's answer was not responsive to the question and was highly prejudicial. The court ruled out the last part of the witness's answer, about selling the calves, instructed the witness not to volunteer testimony not asked of him, and denied the motion for a mistrial. Counsel for the plaintiffs then urged that the answer was material to show that

the defendants got the production of the farm, "and that he sold the calf and collected for it." Counsel for the defendants again moved for a mistrial, on the ground that this statement, claiming that the defendants owed for some cattle which were sold, was improper, prejudicial, and immaterial to the issue of whether or not any rent was due. At the conclusion of the witness's testimony, the court instructed the jury to disregard what was said about Smith selling the calves. It is contended by the movants that the improper testimony and remarks were prejudicial because the proceeding was one to recover rents for a certain house and premises, and the irrelevant statements were made for the sole purpose of prejudicing the defendants by impressing the jury that the defendants were still in possession of cows owned by the plaintiffs and would sell the plaintiffs' cattle without accounting for them.

Although the questions asked were such as to bring out the answers complained of, nevertheless it appears that the court admonished the witness to answer the questions if he could and not to volunteer testimony not asked of him. The court also instructed the jury to disregard what was said by counsel about Smith selling the calves, and ruled out Turner's testimony to the same effect, which may be construed as his explanation of why he could not state how many cows came in fresh with calves during 1952. And while Turner's testimony, to the effect that he presumed Smith still had his good cattle, was not ruled out, no objection was made, and there was no motion to strike such evidence. This answer was also, in a sense, responsive to the question, in that it identified the cattle as those still in Smith's possession. Furthermore, the record shows that the next question asked the witness, as to what cows he was trying to collect rent on for the year 1952, was a rephrasing of the previous question, "Then what are you charging Mr. Smith with—what kind of cows were up there?" It is not contended that the answer to the question as restated was unresponsive or prejudicial. Counsel for the defendants, in cross-examining one of the plaintiffs, took the risk of bringing out unfavorable testimony by the form of his questions, and that he elicited such evidence is not ground for a mistrial.

■ In special ground 5, it is contended that certain material

evidence was illegally admitted to the jury over the defendants' objections. H. C. Abercrombie, one of the plaintiffs, testified on direct examination that, as to whether the plaintiffs had any investment in any cattle on the farm over the original eighteen, they paid off a mortgage on more than eighteen. This was objected to as immaterial and irrelevant. After a brief colloquy between court and counsel, the witness was asked, "Did you have any other cows in addition to the eighteen Holsteins that Mr. Smith had that he was milking there on the property, or an interest in any other cows that he was milking, or an equity in them?" An objection was made that the plaintiffs were not entitled to any rental off of anything they had an equity in. The court stated that it depended on what the equity was, and ordered the witness to answer. Abercrombie then testified: "We paid $5,100 mortgage off on the cows, on the entire cows that were there; part of it went to pay off the mortgage on the eighteen and the other on some other cows, I believe there were about nine, I am not sure. There was around $900 of my money that went to pay off the other cows above the eighteen. Yes, Mr. Smith was getting the production of those cows in which I had an equity of $900. There was around nine cows; that was in addition to the eighteen." It is contended in this ground of the motion that the evidence authorized recovery for milk from cows not owned by the plaintiffs; that the question of milk from cows was irrelevant to the issue made by the pleadings, as to whether rents were due on a house and premises.

However, it is apparent from the record that the cows were treated by both parties as being included in the rented property, and this evidence was admissible as data from which the jury could find the reasonable rental value of the house and premises. The number of cattle which the land could sustain, and the production of the cattle thereon, were relevant to the issue upon which the case was tried, and this ground does not show error.

■ The evidence shows that the farm in question consisted of 374 acres of land, with four barns and four houses, pasteurizing equipment, a walk-in milk cooler, and bottling equipment. 160 to 150 acres were in pasture land, of which from 50 to 60 acres were year-round pastures. During the months from March to September, 1952, the defendants had 44 cows on the farm,

about 30 of which were producing milk. The defendants had obtained loans upon the farm in the amount of $50,000; and had sold it for $52,000 at one time. The plaintiffs testified that they were familiar with rental values in Dade County, and that the reasonable monthly rental value of the farm was $500. The defendant, Dan Smith, testified that the reasonable monthly rental value of the farm was $100, and D. T. Brown testified that the rental value was $1,000 per year.

The verdict was for $2,662, less $662, total $2,000, for the period of six months and 25 days from March 1 to September 25, 1952. This was a finding that the monthly rental value of the farm was about $390, which was well within the range of the evidence as to the rental value of the farm. The verdict was authorized by the evidence, and the court did not err in denying the motion for new trial.

*Judgment affirmed. Felton and Quillian, JJ., concur.*